**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **AUTUMN IAMS**, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>**WNS GLOBAL SERVICES, LLC.**<br><br>Defendant. | COLLECTIVE AND CLASS ACTION<br><br>No.: 25 Civ. 7942<br><br>Hon. |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Autumn Iams, individually and on behalf of all others similarly situated (hereinafter, "Plaintiff"), by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendant WNS Global Services, LLC ("Defendant"), and states as follows:

## INTRODUCTION

1. This is a collective action that arises out of Defendant's systemic failure to compensate its employees for all hours worked, including overtime hours worked at the appropriate overtime rate, in willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*. and common law.

2. Plaintiff and the putative collective members consist of current and former senior advisors, senior associates or similar positions ("Advisors"), who were compensated on an hourly basis. Throughout the relevant period, Defendant maintained a corporate policy and practice of failing to compensate its Advisors for all pre-, mid- and post- shift off-the-clock work.

3. Regardless of the specific job title, all Advisors: (1) are paid on an hourly basis; (2) are classified as non-exempt employees; (3) use the same timekeeping system(s); (4) use many (if not all) of the same computer programs; (5) are subject to the same relevant timekeeping and

attendance policies; and (6) have the primary job duty of providing assistance to Defendant's customers.

4. Defendant required its Advisors to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and logging into phones. The Advisors only "clocked in" and received compensation *after* this preliminary work was completed, though they were required to perform this work to be "phone ready" when their scheduled shifts began.

5. An Advisor's failure to be "phone ready" when the scheduled shift began (or when the shift resumed after meal periods), would result in poor schedule adherence scores, poor performance evaluations, warnings, discipline, and possibly termination.

6. The Advisors routinely worked 40 hours or more per week before accounting for their off-the-clock work. When the off-the-clock work is included, the Advisors, even those Advisors who were scheduled and paid for only 40 hours per week, worked over 40 hours per week without the required overtime premium for all time worked over 40 hours.

7. Defendant, through its managers, had actual and constructive knowledge that its Advisors were completing this off-the-clock work without compensation. Nevertheless, Defendant suffered or permitted, and in fact trained and required, its Advisors to complete this unpaid work.

8. The U.S. Department of Labor recognizes that call center jobs, which are similar to the positions held by Defendant's Advisors, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is Defendant's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of

the workday." *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards, available at: *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers* (last visited July 16, 2025).

9. The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *Id*. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

10. Defendant's practice of failing to compensate its Advisors for all hours worked violated the Advisors' rights under the FLSA.

11. Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> ***All current and former senior advisors, senior associates, or similar positions who worked for Defendant at any time during the past three years.***

12. Defendant is liable for its failure to pay its Advisors for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

13. Advisors who elect to participate in this FLSA collective action seek compensation for all off-the-clock pre- and post-shift work performed for Defendant, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

15. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

16. Additionally, this Court has personal jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

17. Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees, including Plaintiff and the Advisors, engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

18. The Court has personal jurisdiction over Defendant because Defendant conducts business within the Southern District of New York and maintains a principal place of business in the Southern District of New York.

19. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391 (b) and (c) because the Defendant conducts business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

20. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

**PARTIES**

21. Plaintiff Autumn Iams is a resident of Lookout, West Virginia. Plaintiff worked for Defendant as a remote senior advisor from approximately August 2024 to February 2025. Defendant compensated Plaintiff for her services as a senior advisor in the form of an hourly wage, most recently at the rate of $21.00 per hour. Plaintiff Iams signed a consent form to join this collective action lawsuit. ***Exhibit A***.

22. Additional putative Collective members were or are employed by Defendant as Advisors in different locations during the past three years and their consent forms will also be filed in this case.

23. Defendant is a company specializing in providing business process management services.

24. Defendant is a limited liability company organized under the State of Delaware with their United States headquarters located at 515 Madison Ave., 8th Floor, New York, NY 10022.

25. Defendant's registered agent is The Corporation Trust Company located at 1209 Orange Street, Wilmington, DE 19801.

26. Upon information and belief, Defendant employed hundreds of Advisors – including Plaintiff – within the past three years and across the United States to assist their customers with their customer service needs.

## GENERAL ALLEGATIONS

27. Throughout their employment with Defendant, Plaintiff and other Advisors were required to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

28. Defendant employs hundreds of Advisors, providing customer service and support to Defendant's customers throughout the United States.

29. Defendant has employed hundreds of Advisors over the past three years to handle customer phone calls concerning various issues.

30. Defendant compensated its Advisors on an hourly basis and classified them as non-exempt employees under the FLSA.

31. Upon information and belief, Defendant maintains documents that demonstrate the promised hourly wage for each Advisor, including but not limited to: offer letters, paystubs, and/or other payroll records.

32. Defendant's Advisor positions typically have schedules that require employees to work at least eight (8) hours per day, on average five (5) days each week, and forty (40) hours or more in a workweek. However, in some workweeks, Defendant's Advisors work less than forty (40) hours in a week and in other weeks they work more than forty (40) hours. If Defendant's Advisors strictly adhere to Defendant's baseline forty (40) hour schedule, the Advisors schedule results in Advisors working overtime on a weekly basis.

33. Throughout their employment with Defendant, Plaintiff and the other Advisors' job duties included fielding inbound calls and performing a wide range of support services to those callers with questions.

34. Once hired, Defendant provided all Advisors with training on, *inter alia*, how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time; the importance of attendance and schedule expectations; and Defendant's policies related to each topic. The training Defendant's Advisors receive is substantially, if not entirely, the same and all Advisors are subject to the same disciplinary policies.

35. Plaintiff and other similarly situated Advisors are instructed to be "phone ready" the moment their scheduled shift starts. This requires Defendant's Advisors to be logged in and have loaded their essential work-related computer programs and applications at the start of their shift so they can be prepared to take calls and/or attend meetings the moment their shift begins. An Advisor's failure to be "phone ready" could result in poor performance evaluations, warnings,

discipline, and possibly termination. Thus, Defendant forces its Advisors to perform the boot-up and login process before clocking into Defendant's timekeeping system.

36. All of Defendant's Advisors use the same or similar computer networks, software, programs, and applications in the course of performing their job responsibilities. These programs and applications are an integral and indispensable part of the Advisor's work, and they cannot perform their jobs without them.

37. Once training is completed and to perform their job duties, Plaintiff and all other Advisors are required to boot up and log into various computer networks, software programs and applications, in order to access information necessary to perform their job functions. However, Plaintiff and all other Advisors are instructed to not actually "clock in" for their shifts until after the computer boot-up and login process is complete or nearly complete.

38. The pre-shift off-the-clock time Plaintiff and all other Advisors spend booting up, logging in, and logging off their computers directly benefits Defendant and is integral and indispensable to the Advisors' job responsibilities.

39. Despite knowing Plaintiff and all other Advisors perform pre-, mid-, and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

40. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other Advisors boot up and log into their computers each day, along with the time they log into their telephone systems and the time they log off and shut down their computers.

41. Because Defendant required its Advisors to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations

of the total amount of time Advisors spend working for Defendant. Thus, the hours reflected on the Advisors' paystubs are also inaccurate representations of the hours they worked.

42. Plaintiff and similarly situated Advisors regularly worked overtime and non-overtime hours for which they were not paid.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

43. Defendant maintained detailed attendance and schedule adherence policies and used them to evaluate its Advisors' job performance.

44. Defendant used its attendance/schedule adherence policies to require its Advisors to arrive early and work off-the-clock so they can be "phone ready" at the start of their shifts.

45. Throughout their employment with Defendant, Plaintiff and other Advisors were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

46. Upon arriving at their home computer, Defendant's Advisors were trained and required to follow a specific protocol to start up and log into the company's computer network and numerous software programs to access the necessary information to perform their work.

47. The pre-shift boot-up and login process generally consisted of the following steps:

a. The Advisors turned on or woke up their computer and logged in;

b. The Advisors then opened and logged into the WNS knowledge base;

c. The Advisors then opened the client's software;

d. The Advisors then opened the Applied software;

e. The Advisors then opened the Epiq software;

f. The Advisors then opened Microsoft Teams and Notes software;

g. The Advisors then opened their email and internet browser;

h. Once all applications to be "call ready" were opened, Advisors would then open the timekeeping application, clock in, and their time clock would start.

48. The boot-up and login process described above took substantial time on a daily basis, ranging from 20 to 25 minutes per shift, or more, depending on how fast/slow the computers and programs were operating.

49. Advisors were required to complete each of these tasks prior to "punching in," as Advisors could not be "phone ready" until these tasks were complete.

50. Although Advisors were allowed to clock in up to 5 minutes before their scheduled shift began, this only covered a small portion of the boot-up and login process described above because it took 20 to 25 minutes on average.

51. If Advisors arrived immediately prior to their scheduled shifts, they were in danger of clocking in late if they could not complete the required pre-shift work necessary to be "phone ready" when their scheduled shifts began, and they would therefore receive a tardy on their records and poor schedule adherence scores.

52. Because Defendant's Advisors typically worked scheduled shifts of at least forty (40) hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

53. Defendant had express and constructive knowledge that its Advisors began the pre-shift boot-up and login process while off-the-clock to make sure they were "phone ready" and "clocked in" on time.

54. Defendant's Advisors are not compensated for any of this time because Defendant prohibits Advisors from clocking into their timekeeping software before the start of their scheduled shift.

55. The pre-shift off-the-clock work performed by Advisors directly benefits

Defendant and is integral and indispensable to their job duties and responsibilities as Advisors.

**B. <u>Mid-Shift Off-the-Clock Work</u>**

56. Defendant provided its Advisors with a scheduled 30-minute unpaid meal period during each work shift.

57. However, Defendant also required its Advisors to perform off-the-clock work during these unpaid meal periods, including returning from the 30-minute meal period approximately five to ten minutes early in order to have enough time to log back into Defendant's programs and software prior to resuming their shifts. This process was similar to the pre-shift login process described above (albeit abbreviated), and this time went unpaid.

58. According to the U.S. Department of Labor, "[r]est periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked. Bona fide meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal." *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards, available at: *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers* (last visited July 16, 2025).

59. The mid-shift off-the-clock time worked by Defendant's Advisors directly benefited Defendant and the process was an integral and indispensable part of the Advisors' job responsibilities.

60. Because Defendant's Advisors typically worked scheduled shifts of at least 40 hours per week, their required mid-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

61. Defendant had express and constructive knowledge that its Advisors took unpaid

meal periods and that its Advisors also performed mid-shift off-the-clock work during those unpaid meal periods in order to make sure they were "phone ready" and "clocked in" on time for their shifts to resume.

62. Despite having express and constructive knowledge of its Advisors' mid-shift off-the-clock work, Defendant failed to exercise reasonable diligence to determine the amount of unpaid overtime owed to its Advisors.

**C. Post-Shift Off-the-Clock Work**

63. Pursuant to Defendant's policies, training, and direction, Plaintiff and all other Advisors are required to "clock out" of Defendant's timekeeping system before closing all work applications and systems to make certain they are "clocked out" the moment they stop fielding calls.

64. The off-the-clock post-shift process takes substantial time on a daily basis, with said time ranging from five to ten minutes per shift.

65. Defendant's Advisors are also not paid for their post-shift off-the-clock work.

66. The post-shift off-the-clock work Plaintiff and other Advisors perform is compensable, directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Advisors.

**D. Defendant Benefitted from the Uncompensated Off-the-Clock Work**

67. At all relevant times, Defendant has required and directly benefited from the off-the-clock work performed by Plaintiff and all other Advisors in connection with the pre-, mid- and post-shift activities described above.

68. At all relevant times, Defendant has controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other

Advisors.

69. At all relevant times, Defendant was able to track the amount of time Plaintiff and all other Advisors spend in connection with pre-, mid- and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other Advisors for the off-the-clock work they performed.

70. At all relevant times Plaintiff and all other Advisors were non-exempt hourly employees, subject to the requirements of the FLSA.

71. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the other Advisors in order to pressure them into performing work off-the-clock.

72. Defendant expressly trained and instructed Plaintiff and all other Advisors to perform these off-the-clock work activities when they were not "clocked in" to Defendant's timekeeping system.

73. At all relevant times, Defendant's policies and practices deprived Plaintiff and the Advisors of wages owed for off-the-clock work activities they performed. Because Defendant's Advisors typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

74. For example, during the workweek of October 6 through October 12, 2024, Plaintiff worked at least 40 recorded and compensated hours. In addition, she performed pre-shift, mid-shift, and post-shift off-the-clock work as described above, for which she received no compensation. As a result of Defendant's policies and practices, Plaintiff was denied overtime pay to which she was entitled.

75. Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff and the Advisors worked over 40 hours and exactly which weeks

they worked under 40 hours.

76. Defendant knew or should have known that the time spent by Plaintiff and other Advisors in connection with the off-the-clock work activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

77. Despite knowing Advisors performed off-the-clock work before, during, and after their shifts, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

78. Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of 40 hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

79. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> ***All current and former senior advisors, senior associates, or similar positions who worked for Defendant at any time during the past three years.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

80. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated Advisors.

81. Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

82. Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the FLSA Collective are not paid the full premium overtime compensation they are due when they work beyond forty (40) hours in a workweek and are not paid any overtime in workweeks where their time cards reflect that they work slightly less than forty (40) hours, such as thirty-eight (38) to forty (40) hours, but actually work in excess of forty (40) hours, for which they are due both overtime gap time and overtime.

83. Defendant assigns and/or is aware of all of the work that Plaintiff and the members of the FLSA Collective perform.

84. Upon information and belief, Defendant utilizes a centralized payroll system which calculates overtime pay for all similarly situated employees in the same or similar manner.

85. As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engages in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours worked in excess of 40 hours per workweek;

b. Willfully failing to pay overtime gap time for those unpaid hours under 40 associated with unpaid overtime;

c. Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant; and

d. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for off-the-clock work, including the pre- and mid-shift boot-up and post-shift shutdown process.

86. Defendant is aware or should be aware that federal law required them to pay Plaintiff and the members of the FLSA Collective overtime premiums (computed at their regular rate of pay) for hours worked in excess of forty (40) per workweek.

87. Defendant's unlawful conduct has been and continues to be widespread, repeated, and consistent.

88. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

89. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issue – the amount of uncompensated pre-, mid- and post-shift off-the-clock work – does not vary substantially among the proposed FLSA Collective members.

90. There are many similarly situated current and former Advisors who have been underpaid in violation of the FLSA. They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

91. Plaintiff estimates the FLSA Collective, including both current and former Advisors over the relevant time period, includes hundreds of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

92. All of the estimations discussed herein will be refined after collective discovery is completed.

**RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

93. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> ***All current and former hourly senior advisors, senior associates, or similar positions, who worked for Defendant at any time during the applicable statutory period.***

("Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

94. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

95. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre- and mid-shift time Rule 23 Nationwide Class members spend on startup and login activities each shift is compensable;

b. Whether the post-shift time Rule 23 Nationwide Class members spend on shutdown activities each shift is compensable;

c. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

d. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

96. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

97. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff has retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

98. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

99. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

100. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

101. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq.* – FAILURE TO PAY OVERTIME**

102. Plaintiff re-alleges and incorporates all previous paragraphs herein.

103. At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

104. Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

105. At all times relevant to this action, Plaintiff and the proposed Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

106. Plaintiff and the proposed Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees and were classified as such.

107. Plaintiff and the proposed Collective members were either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

108. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and proposed Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

109. At all times relevant to this action, Defendant required Plaintiff and the proposed Collective members to regularly perform 20 to 25 minutes or more of pre-shift computer boot-up and login time, five to ten minutes of mid-shift login time, and five to ten minutes of log out time per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

110. All of the off-the-clock work performed by Plaintiff and the proposed Collective members could have easily been tracked and recorded by Defendant, but was not.

111. In the aggregate, the amount of Plaintiff's and the proposed Collective members' uncompensated time amounted to hours of uncompensated time per week and, over the three-year statutory period, was not *de minimis*.

112. In workweeks where Plaintiff and the proposed Collective members worked forty (40) hours or more, the uncompensated pre-shift off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regularly rate of pay. 29 U.S.C. § 207.

113. Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how much time Advisors spent working off-the-clock to complete off-the-clock work activities, and Defendant could have properly compensated Plaintiff and the proposed Collective members for the off-the-clock work they performed, but did not.

114. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, Plaintiff and the proposed Collective members are entitled to their unpaid overtime, plus an additional equal amount in liquidated (double) damages, plus costs and reasonable attorneys' fees.

**COUNT II**
**(On Behalf of the Rule 23 Nationwide Class)**
**BREACH OF CONTRACT**

115. Plaintiff re-alleges and incorporates all previous paragraphs herein.

116. Defendant had binding and valid contracts with Plaintiff and the Rule 23 Nationwide Class to pay for each hour worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class performed on behalf of Defendant.

117. For example, Defendant offered to compensate Plaintiff at a minimum of $21.00 per hour if she agreed to perform services for Defendant as a senior advisor. Plaintiff accepted Defendant's offer and performed under the contract by fulfilling her duties as a senior advisor.

118. Plaintiff and the Rule 23 Nationwide Class accepted the terms of Defendant's contractual promises and performed under the contract by doing the job and carrying out the work performed each shift including the unpaid off-the-clock work that was required in connection with pre-, mid- and post-shift work activities, described herein.

119. By not paying Plaintiff and the Rule 23 Nationwide Class the agreed upon hourly wage for the off-the-clock work performed, Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class.

120. Plaintiff and the Rule 23 Nationwide Classes remedies under the FLSA are inadequate in this case to the extent Defendant paid Plaintiff and the Rule 23 Nationwide Class more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., a pure "gap time" claim).

121. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and the Rule 23 Nationwide Class spent performing off-the-clock activities.

122. As a direct and proximate result of Defendant's contractual breach, Plaintiff and the Rule 23 Nationwide Class were damaged in an amount to be determined at trial.

**COUNT III**
**(On Behalf of the Rule 23 Nationwide Class)**
**UNJUST ENRICHMENT**

123. Plaintiff re-alleges and incorporates all previous paragraphs herein.

124. The Count is pled in the alternative to Count II *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

125. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the

work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

126. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

127. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

128. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

129. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

130. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

131. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

132. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Autumn Iams, on behalf of herself and on behalf of the putative FLSA Collective, requests judgment as follows:

a. Conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

b. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, email addresses, and phone numbers of all proposed Collective members, and permitting Plaintiff to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

c. Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's common law claims (Counts II and III);

d. Designating Plaintiff Autumn Iams as the Representative of the FLSA Collective action and the Rule 23 Nationwide Class, and undersigned counsel as Collective/Class counsel for the same;

e. Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. Declaring Defendant's violations of the FLSA were willful;

g. Declaring Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class by failing to pay Plaintiff and the Rule 23 Nationwide Class for each hour they worked at a pre-established (contractual) hourly rate;

h. Declaring Defendant was unjustly enriched through its failure to pay Plaintiff and the Rule 23 Nationwide Class for the off-the-clock work discussed herein;

i. Granting judgment in favor of Plaintiff and the proposed Collective members as against Defendant and awarding Plaintiff and the proposed Collective members the full amount of damages and liquidated damages available by law;

j. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

k. Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: September 24, 2025

Respectfully Submitted,

*/s/ Jonathan Bernstein*
Jonathan Bernstein
ISAACS BERNSTEIN, P.C.
2108 Yardley Road
Yardley, PA 19067
Telephone: 917-693-7245
jb@lijblaw.com

Kevin J. Stoops (*pro hac vice* forthcoming)
Alana Karbal (*pro hac vice* forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
akarbal@sommerspc.com

*Attorneys for Plaintiff and the Putative Class/Collective Action Members*